## HENGGI v. DALLMEYER.

PATENTS; INTERFERENCE; EVIDENCE; BURDEN OF PROOF.

1. In an interference, the burden of proof is upon the junior party (citing *Hunt* v. *McCaslin*, 10 App. D. C. 527; and *Smith* v. *Smith*, 31 App. D. C. 518), and the burden is not sustained by his uncorroborated testimony (citing *Malcom* v. *Richards*, 47 App. D. C. 582.)

2. A disclosure of an invention to be sufficient must so describe the invention as to make its nature clear to persons competent to understand it. (Following *Eastman* v. *Houston*, 18 App. D. C. 135.)

No. 1145. Patent Appeals. Submitted May 13, 1918. Decided May 27, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Mr. C. T. Milans* and *Mr. William W. Varney* for the appellant.

*Mr. R. D. Totten* for the appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

The controversy in this case is in respect to which one of the parties originated the device of the issue, called in brief "wing-dies" for making "creep-checks," which are used to prevent "railroad rails from moving along the tracks in the direction of the length of the rails." The Acting Examiner of Interferences awarded priority to Lewis O. Henggi. On appeal his decision was reversed by the Examiners in Chief, and their action was affirmed by the First Assistant Commissioner. All the transactions referred to herein occurred in 1913. Thomas D. Dallmeyer at the dates given was the secretary and treasurer of the Valley Forging Company, and exercised a general management over the manufacturing operations of the company. Henggi, until a few days previous to the taking of the testimony, was employed by the same company as factory superintendent.

Henggi claims conception and disclosure in June and reduction to practice in September, while Dallmeyer asserts that he conceived the invention October 5, disclosed it October 6, and reduced it to practice October 25.

Dallmeyer is the junior party and therefore has the burden of proof. *Hunt* v. *McCaslin,* 10 App. D. C. 527; *Smith* v. *Smith,* 31 App. D. C. 518. He testified that his company having received an order for creep-checks, an article which has not been manufactured by it before, a certain method for making them was adopted, but this proved to be too slow and was soon rejected; that on Sunday, October 5, he conceived the invention of the issue, made drawings, only part of which was offered in evidence, the other part—that which covered the main features of the device—having been lost, he said; that on Monday, October 6, he disclosed the invention to McVey, vice-president of his company, and to Henggi; and that immediately after-

wards he and Henggi prepared drawings of the dies. Testimony corroborating his statements is essential to his case. *Malcom* v. *Richards,* 47 App. D. C. 582, and cases there cited. But he has failed to produce any. His wife testified that she saw him at work upon sketches, but she could give no description of them further than that they were for the purpose of reducing the cost of manufacturing creep-checks. McVey said that Dallmeyer stated on Monday morning, October 6, that he had worked out a scheme which would reduce the operations on the creep-checks; that he had a small sketch which he wanted the witness to examine, but that the latter only glanced at it and told him that he would look at it later. It does not appear that he did so. McVey also testified that at the same time Dallmeyer said he would go over to the shop and see what Mr. Henggi thought of it, referring to the sketch. This is all the corroborating testimony adduced by Dallmeyer, and it falls very far short of answering the law's requirements. Ordinarily a disclosure to be sufficient must so describe the purported invention as to make its nature clear to persons competent to understand it. *Eastman* v. *Houston,* 18 App. D. C. 135, 140. It is manifest that the foregoing testimony does not establish any such disclosure by Dallmeyer.

Henggi contends that he conceived the invention in June and made drawings some weeks later, fixing the date by the birth of his younger child; that some time in August he disclosed the invention to Dallmeyer, who rejected it because, as stated by him, it was too expensive; that Dallmeyer tried two methods for making the creep-checks, but found them unsatisfactory, and then fell back on Henggi's idea. This, according to Henggi, was some time in September, when, as he asserts, he made drawings, which have been offered in evidence and embody the issue. He also says that the dies were complete, and were operated, early in October, and that as a reward for his services in inventing them he was given a raise in salary by McVey about November 1. He denies disclosure of the invention by Dallmeyer to him.

Henggi's wife and son testified that he was working on drawings in June for a tool or die which would bend both ends of a

piece of metal at the same time. This is one of the things accomplished by the invention. Yute, a pressman, employed by the Valley Forging Company, upon whose press the first dies were installed, says that Henggi told him that he, Henggi, had disclosed to Dallmeyer a set of dies which would increase the speed of manufacturing the creep-checks, but that Dallmeyer rejected them as too expensive. He describes the dies by calling them wing-dies, which appears to reveal only two of the distinguishing features of the invention. Jones, another machinist in the employ of the same company, testifies to the same effect at Yute. They also support Henggi with respect to other things touching which he and Dallmeyer differ; *e. g.,* Henggi says there were two experiments made before the wing-dies were adopted, and Dallmeyer says there was but one, while Yute and Jones agree with Henggi. Yute also said that the wing-dies, without the "kicker," an important but not an indispensable part, were tried out by him just before September 30, the date of his marriage, and that when he returned from his wedding tour about two weeks later the dies were complete. If this be true then the greater part of the device was manufactured and in a condition to be tried out before Dallmeyer thought of it. Yute and Jones were in a position to know the facts about which they testified. They are still in the employ of the forging company, and this circumstance gives added weight to their testimony in favor of Henggi. McVey admits that Henggi's salary was increased at the time mentioned by the latter, but does not admit that it was done on account of the success of the invention. With regard to that McVey says he gave both Dallmeyer and Henggi credit for the device. Dallmeyer also admits the raise in Henggi's salary.

We have thus given the testimony in outline. A more detailed analysis of it might be made, but we deem it unnecessary in view of the exhaustive opinion of the Acting Examiner of Interferences, whose conclusions we adopt. It is true that the corroborating testimony of neither party concerning conception and disclosure is as complete as it might be, but the position of Dallmeyer in this respect is worse than that of his opponent; and as the burden is on him he cannot prevail over Henggi.

Therefore the decision of the Commissioner is reversed, and priority of invention of the subject-matter of the interference is awarded to Henggi, the senior party.                    *Reversed.*

Mr. Justice McCoy, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal, in the place of Mr. Justice ROBB.